(88 App. Div. 593.)

PEOPLE ex rel. HOLDEN v. WOODBURY, Street Cleaning Com'r.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. GREATER NEW YORK CHARTER—STREET CLEANING—DISMISSAL FROM FORCE —POWER OF COMMISSIONER.

　　Under Greater New York Charter, Laws 1897, p. 188, c. 378, § 537, granting the commissioner of street cleaning power to remove a member of the force, in his discretion, on evidence satisfactory to him, the refusal of an accused member to make explanation to the commissioner of a charge of insubordination preferred by the deputy is cause for immediate removal by the commissioner.

2. SAME—REMEDY—MANDAMUS.

　　Where a member of the street cleaning force is dismissed by the commissioner for insubordination on a charge preferred by the deputy, which accused refuses or neglects to answer on being asked by the commissioner what he has to say to it, mandamus is not a proper remedy, under Greater New York Charter, Laws 1897, p. 188, c. 378, § 537, providing that on dismissal a member shall have the right to sue out a writ of certiorari or other appropriate remedy for the purpose of reviewing the action of the commissioner.

Appeal from Special Term, New York County.

Mandamus by the people of the state of New York, on the relation of Francis I. Holden, against John M. Woodbury, as commissioner of street cleaning of the city of New York. From an order granting a motion for peremptory writ of mandamus restoring the relator to the position of driver in the department of street cleaning, the commissioner appeals. Reversed.

85 N.Y.S.—11

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

John F. O'Brien, for appellant.
Thomas J. O'Neill, for respondent.

McLAUGHLIN, J.   The relator was a driver in the department
of street cleaning in the city of New York, from which position he
was removed by an order of the commissioner.   After his removal,
the relator applied for and obtained an alternative writ of mandamus
to determine whether or not he had had a reasonable opportunity to
make an explanation of the charge made against him, and for which
he was removed.   The question was submitted to a jury, which found
in his favor, and thereafter an order for a peremptory writ was made,
directing the commissioner to reinstate him, from which the present
appeal is taken.

We are of the opinion that the order appealed from should be re-
versed, for two reasons:

1. From the relator's own statement it appeared that on the 24th
of June, 1902, he appeared before the board of appeals of the de-
partment of street cleaning to answer certain charges which had been
preferred against him for failure to feed the horse which he drove.
That during the course of the hearing, after the person who had pre-
ferred the charge had verbally admitted that the relator was not
guilty of it, the relator was asked by the deputy commissioner if he
desired to ask the one preferring the charge any questions, and he
responded by asking that such person be sworn.   His application
was denied, and then the relator said, "I demand that the man be
sworn to tell the truth."   The deputy commissioner thereupon said,
"I believe him, damn you!" and the relator responded: "In Dr. Wal-
lace's office there is a sign up there by order of the commissioner
that a gentleman never uses profanity, and the second paragraph
reads, 'Are you a gentleman,' followed by an interrogation point."
He was immediately ordered by the deputy commissioner to leave
the room, which he did, going at once to the office of the commis-
sioner, where he stated what had occurred.   Thereupon the com-
missioner, together with the relator, returned to the room, and the
proceeding was continued, the commissioner himself presiding.   At
the conclusion of the hearing the deputy commissioner preferred a
charge of insubordination against the relator, in that during the hear-
ing referred to he had interrupted it, and had, in effect, charged that
the deputy commissioner was not a gentleman.   The charge having
been made and stated to the relator, he was asked by the commission-
er what he had to say to it, and the relator answered, "I protest
against proceeding with any charge not preferred against me without
due notice and time to prepare a defense in my case," and he refused
or neglected to make any explanation whatever.   He was subse-
quently removed by the commissioner for insubordination.

The only question presented is whether upon these facts he had a
reasonable opportunity to make an explanation.   We think he did.
The statute, of course, guaranties that one holding a position sim-

ilar to the one which the relator held, before he can be removed, shall. be afforded an opportunity to make an explanation. Greater New York Charter, Laws 1897, p. 188, c. 378, § 537. This section provides, among other things, that:

"No member of the clerical or uniformed force of street cleaning shall be removed until he has been informed of the cause of the proposed removal and has been allowed an opportunity to make an explanation, and in every case of removal the true grounds thereof shall be entered upon the records of the department. The commissioner of street cleaning shall have power, in his discretion, on evidence satisfactory to him that a member of the uniformed force has been guilty of any * * * breach of discipline, to punish the offending party by * * * dismissal from the force. * * * In the event of the removal of any member of the clerical or uniformed force he shall have the right to sue out a writ of certiorari or other appropriate remedy for the purpose of reviewing the action of the commissioner or his deputy and upon being successful upon such proceeding he shall be entitled to be reinstated and to receive full pay for the time of his suspension or removal from office."

It will be observed that the statute does not fix any time within which one shall be afforded an opportunity to make an explanation. All it says is that he shall have such opportunity. The charge against the relator was one of insubordination, in that he had interrupted the prior proceeding, and, in effect, at least, accused his superior officer of not being a gentleman, and when called upon to explain his conduct he refused to make any explanation whatever. He knew what the charge was, and was given an opportunity to explain his conduct. This is all the statute required, and the commissioner, in his discretion, had the right, the relator having failed to make any explanation, to remove him. People ex rel. Kennedy v. Brady, 166 N. Y. 44, 59 N. E. 701. It does not require argument to demonstrate that, if such acts were to be tolerated by the commissioner, there would be no such thing as discipline in his department.

2. The order must also be reversed because mandamus is not an "appropriate remedy for the purpose of reviewing the action of the commissioner." A mandamus is to command action, and not to review prior proceedings. It cannot be used for the correction of errors. The relator had the right to review the action of the commissioner by certiorari, because the statute expressly conferred upon him that right, or to resort to any other appropriate remedy by which his action could be brought under review. The words "appropriate remedy," used here in the statute, mean some remedy by which the proceedings taken by the commissioner can be brought before the court for review, and not by a proceeding independent of it which commands the commissioner to do either one thing or the other. Abrams v. Hempstead Town Auditors, 45 Hun, 272; Judges of Oneida Common Pleas v. People, 18 Wend. 92; People ex rel. Francis v. Common Council, 78 N. Y. 33, 34 Am. Rep. 500; 19 American & English Enc. of Law (2d Ed.) 737.

Upon both grounds, therefore, we are of the opinion that the order appealed from must be reversed, and the motion for a mandamus denied, with $50 costs and disbursements. All concur.